UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC CARLSON,<br><br>                    Plaintiff,<br><br>       v.<br><br>LEWIS COUNTY HOSPITAL DISTRICT No.1, a Washington governmental entity; ROSS JONES, a married man; JUDY RAMSEY, a married woman; KENTON SMITH, a married man; MARC FISHER, a married man; SHANNON KELLY, a married woman; SHERI HENDRICKS, a married woman,<br><br>                    Defendants. | CASE NO. 15-5913<br><br>ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR WAIVER OF ATTORNEY-CLIENT PRIVILEGE |

This matter comes before the Court on the Plaintiff's Motion to Compel Discovery and for Waiver of Attorney-Client Privilege (Dkt. 19) and the Defendants' motion to strike (Dkt. 24). The Court has considered the pleadings filed regarding the motions and the remaining file.

On December 15, 2015, Plaintiff, a gay man, filed this case asserting claims for violation of his procedural due process and equal protection rights under the U.S. Constitution (pursuant to 42 U.S.C. § 1983) and for violations of the Washington Law Against Discrimination, RCW 49.60, *et. seq*. ("WLAD") in connection with the termination of his employment. Dkt. 1. Plaintiff seeks damages, attorney's fees and costs. *Id.*

1     Pending before the Court is Plaintiff's motion to compel Defendants to respond to
2 Plaintiff's First Interrogatories and Requests for Production and for an "order finding that
3 Defendants have waived the attorney-client privilege." Dkt. 19.  Plaintiff also seeks an award of
4 attorney's fees and costs incurred in bringing this motion. *Id.* For the reasons provided, the both
5 the Plaintiff's motion (Dkt. 19) and the Defendants' motion to strike (Dkt. 24) should be granted,
6 in part, and denied, in part.

### I.     FACTS AND PENDING MOTIONS

**A. FACTS**

9     According to the Complaint, Plaintiff Mr. Carlson was hired by Defendant Lewis County
10 Hospital District No. 1 ("Hospital District") as the Chief Financial Operator of Morton General
11 Hospital ("Morton") on November 21, 2014.  Dkt. 1, at 3.  Hiram Whitmer, the Chief Executive
12 Officer of Morton, made the decision to hire Plaintiff.  *Id.*  The Hospital District is governed by
13 an elected board of commissioners ("board"), who are some of the individually named
14 Defendants here.  *Id.*  The Complaint maintains that at the time Plaintiff was hired, Morton's
15 accounting system was "a disaster."  *Id.*  It asserts that Morton had just written off a million
16 dollars in unbilled account receivables because they had not been timely billed.  *Id.*  The
17 Complaint alleges that Morton was at risk of having to write off several million more dollars
18 because other account receivables had gone unbilled for so long.  *Id.*  It maintains that Plaintiff
19 did a good job for Morton, and that Mr. Whitmer awarded Plaintiff a large retention bonus in
20 December of 2014.  *Id.*

21     The Complaint asserts that after meeting him, members of the hospital's board stated that
22 they were "disturbed" by Plaintiff's homosexuality and expressed their "distaste" at having a
23 homosexual man as a leader at Morton.  *Id.*, at 4.  The Complaint alleges that some of the board

members contacted Mr. Whitmer and encouraged him to fire Plaintiff. *Id*. The Complaint asserts that Defendant Shannon Kelly, the Chief Human Resources Officer, also "encouraged Mr. Whitmer to fire Mr. Carlson." *Id.*

In support of Plaintiff's motion, Mr. Whitmer filed an affidavit, stating that he objected to terminating Plaintiff's employment. Dkt. 20, at 9. According to Mr. Whitmer, "under duress" from the board, he consulted Morton's attorney, Julie Kebler, of the law firm Garvey Schubert Barer, regarding the legality of firing Mr. Carlson. Dkt. 20, at 8. He alleges that "[a]fter an extensive review of the situation, [Morton]'s attorney advised that [Morton] use Mr. Carlson's prior bankruptcy and a court case in which a judge mentioned that Mr. Carlson 'may' have committed fraud . . . (but there was no evidence of a fraud) as a pretext for firing him." *Id*. He asserts that he sought advice from the lawyers "to find out about the legality of firing Mr. Carlson for something he had never committed." Dkt. 20, at 8. Mr. Whitmer asserts that he "was given a regimented process to follow as Mr. Carlson had no performance issues and it was well known regarding the [board's] and communities' dislike for Mr. Carlson being homosexual." *Id.* Mr. Whitmer claims that the attorneys advised him to place Mr. Carlson on administrative leave "to make it appear an investigation was being conducted so Mr. Carlson would hopefully not bring a wrongful termination and discrimination suit against the hospital." *Id.,* at 9. He maintains that no investigation was conducted and there was never any intention to do so. *Id.* Under threats from the hospital's board regarding the security of his own job, Mr. Whitmer states that he was forced to fire Plaintiff "because of his sexual orientation." *Id.* After a meeting between Mr. Whitmer and Plaintiff on January 5, 2015, Plaintiff's employment was terminated on January 6, 2015. Dkt. 1, at 3-4. The board fired Mr. Whitmer on March 11, 2015. Dkt. 20, at 2.

B.   **PENDING MOTIONS AND ORGANIZATION OF THE DECISION**

In his pending motion, Plaintiff moves for an order requiring that Defendants produce all documents related to the evaluation of how to terminate Plaintiff's employment, including those that contain the advice of counsel. Dkt. 19.  Plaintiff argues that Morton expressly waived the right to assert attorney-client privilege as to requested discovery because Mr. Whitmer, the CEO, voluntarily disclosed the communications and legal advice Morton received about firing Mr. Carlson. *Id*.  Plaintiff contends that Morton has also implicitly waived the privilege. *Id.* Plaintiff seeks attorneys' fees and costs associated in bringing the motion. *Id.*

Defendants oppose the motion, arguing that Mr. Whitmer did not expressly waive the attorney-client privilege and that no implied waiver occurred. Dkt. 24.  Further, Defendants move to strike the Declaration of Eric Carlson (Dkt. 21) as containing inadmissible hearsay and Mr. Whitmer's Affidavit (Dkt. 20) because it contains "numerous speculative assertions about the motivations of the board." *Id.*

This decision is organized as follows:  it will first address the Defendants' motion to strike (Dkt. 24), then Plaintiff's motion for an order that the attorney-client privilege has been waived (Dkt. 19), then Plaintiff's motion to compel (Dkt. 19), and lastly, Plaintiff's motion for attorneys' fees and costs (Dkt. 19).

## II.   DISCUSSION

### A.  DEFENDANTS' MOTION TO STRIKE

The motion to strike the Declaration of Eric Carlson (Dkt. 24) should be granted, in part.  To the extent that it contains hearsay, it should be stricken.  It was of little utility in deciding the motion.

The motion to strike the Affidavit of Mr. Whitmer (Dkt. 24), should be denied. There is no showing that striking that affidavit is appropriate.

**B. PLAINTIFF'S MOTION REGARDING WAIVER OF THE ATTORNEY CLIENT PRIVILEGE**

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such disclosures." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)(*internal citation omitted*). Corporations are entitled to assert the privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Ruehle*, at 608. Plaintiff makes both federal and state law claims. Dkt. 1. Parties make no showing the analysis under Washington law would different. Accordingly, federal common law will be applied.

Under federal law, the attorney-client privilege is "strictly construed" because "it impedes full and free discovery of the truth." *Ruehle,* at 607. Whether information is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle,* at 607 (*internal citations omitted*). The party asserting the privilege, the Defendants here, have the burden of proving each element. *Ruehle*, at 607.

The parties here do not contest the first seven elements, that Mr. Whitmer made communications with and sought legal advice from Morton's attorneys, in their capacity as attorneys, relating to the firing of Mr. Carlson. Further, they do not contest that the

1  communications were made in confidence by Mr. Whitmer in his role as Morton's CEO and that
2  Defendants are insisting on protection from disclosure. The parties dispute the last element,
3  whether the protection of the privilege was waived. There are two types of waiver of the
4  attorney-client privilege at issue here: express and implied.

         1.  Express Waiver

"[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Weintraub*, at 348. Other courts in this circuit have applied this rule in the context of a public sector entity, *See Galli v. Pittsburg Unified Sch. Dist.*, 2010 WL 4315768 (N.D. Cal. October 26, 2010), and the parties do not assert that any other rule should apply here. "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Weintraub*, at 349. "Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Weintraub*, at 349.

To the extent that Plaintiff asserts that Mr. Whitmer expressly waived attorney-client privilege, Defendants point out that Mr. Whitmer's Affidavit fails to state that any disclosure of the privileged communications occurred while Mr. Whitmer was still Morton's CEO. Although Plaintiffs note that Mr. Whitmer's deposition is scheduled within a week, they acknowledge that on the current record, Mr. Whitmer's statements regarding the advice of counsel occurred after the termination of his employment in March of 2015. Dkt. 26, at 3. Accordingly, he did not

have the authority to waive the attorney-client privilege.  At this stage, Plaintiff's motion that the Court find that Morton expressly waived the attorney-client privilege through Mr. Whitmer should be denied.

### 2. Implied Waiver

Under federal law, waiver of the attorney-client privilege "may be effected by implication." *Weil,* at 24.  In the Ninth Circuit,

> An implied waiver of the attorney-client privilege occurs when:  (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.

*Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (*citing Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)). Further, "an overarching consideration is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party." *Id*. (*internal citations omitted*).

Defendants have arguably taken an affirmative act that put the privileged information at issue.  Plaintiff contends that the first and second prongs are met because, in its Answer, Defendants assert that "Mr. Whitmer voluntarily terminated Mr. Carlson" on the grounds of the alleged fraud. Dkt. 19, at 6 (*citing* Dkt. 10, at 3-4).  He points out that Mr. Whitmer's testimony is directly to the contrary.  *Id.*  Mr. Whitmer states that he was forced to fire Mr. Carlson because of his homosexuality and that he sought advice of counsel on how to do so "legally."  Defendants have arguably placed the privileged information at issue.

Even if the Defendants had not affirmatively put into issue privileged information, the information is sufficiently vital to Plaintiff's claims to meet the third prong of the test.  Plaintiff points out that without a finding of waiver, "Defendants will testify that it was Mr. Whitmer who

made the decision to terminate Mr. Carlson based on the allegation of fraud." Dkt. 19, at 7. They further note that, "Mr. Whitmer will not be allowed to testify that he was instructed to use the allegation of fraud as pretext and to avoid any indication that Mr. Carlson's status as a homosexual was the true basis for Mr. Carlson's firing." *Id*. "The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived," *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (*internal citations omitted*), as it has been here.

Further, in considering the "overarching consideration" of fairness, it would be manifestly unfair to deny Plaintiff access to the information regarding the basis for firing him contained in the documents he seeks. The complete picture of what happened here is only available if all the documents are turned over, including those with attorney-client communications. Defendants have implicitly waived the attorney-client privilege as to the basis for terminating Plaintiff's employment.

## C. PLAINTIFF'S MOTION TO COMPEL

Fed. R. Civ. P. 26 (b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Plaintiff's motion for an order requiring that Defendants produce all documents related to the evaluation of how to terminate Plaintiff's employment, including those that contain the advice of

ORDER ON PLAINTIFF'S MOTION TO COMPEL
DISCOVERY AND FOR WAIVER OF
ATTORNEY-CLIENT PRIVILEGE- 8

counsel, (Dkt. 19) should be granted.  Defendants have implicitly waived the attorney-client privilege by placing the privileged communications at issue.  "[R]aising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject."  *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010).  Accordingly, Plaintiff's motion to compel should be granted.

## D.  PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Pursuant to Fed. R. Civ. P. 37 (a)(5)(A)(ii), if a motion to compel is granted, the court must award attorneys' fees and costs, unless "the opposing party's nondisclosure . . . or objection was substantially justified."

Plaintiff prevailed in his motion to compel.  However, whether Defendants' waived the attorney-client privilege is a close question.  Their non-disclosure and or objection to the discovery sought was substantially justified.  Accordingly, Plaintiff's motion for attorneys' fees and costs (Dkt. 19) should be denied.

## E.  OTHER MATTERS

Defendants are currently represented by the law firm of Garvey Schubert Barer, the same firm that Mr. Whitmer contacted regarding Plaintiff.  The undersigned recognizes that the above findings may now result in issues regarding Washington's Rules of Professional Conduct ("RPC") 3.7 "Lawyer as Witness," and perhaps others, including RPC 1.7 "Conflict of Interest: Current Clients," for the Defendants' lawyers.

Trial is scheduled to begin on March 13, 2017, around three months from now.  Dispositive motions, if any, are to be filed by January 10, 2017.  The discovery deadline has passed.  Plaintiff's motion to compel was filed on the last possible day.

ORDER ON PLAINTIFF'S MOTION TO COMPEL
DISCOVERY AND FOR WAIVER OF
ATTORNEY-CLIENT PRIVILEGE- 9

The parties should be given time to consider the implications of this order. The Defendants' counsel should inform the Court of whether they intend to continue to represent the Defendants and both parties should inform the Court of whether an extension of time for all remaining deadlines is appropriate on or before January 9, 2017.

### III. ORDER

Accordingly, it is **ORDERED** that**:**

- The Defendants' motion to strike (Dkt. 24) **is granted, in part, and denied, in part**;

- The Plaintiff's motion for an order that the attorney-client privilege has been waived (Dkt. 19) **is granted**;

- The Plaintiff's motion to compel (Dkt. 19) **is granted**;

- Plaintiff's motion for attorneys' fees and costs (Dkt. 19) **is denied**; and

- The Defendants' counsel shall inform the Court of whether they intend to continue to represent Defendants and both parties shall inform the Court of whether an extension of time for all remaining deadlines is appropriate on or before **January 9, 2017**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 14th day of December, 2016.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge